**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

FAHEEM AKIL, ANTHONY BOWERS, TASHAWN COUNTS, MATTHEW HALL, ANDREA JANVIER, RANDALL NOWELL, GEORGE PIGFORD, MATTHEW ROSAIO, MALCOLM STODDARD, Individually and on behalf of themselves and all others similarly situated.

Plaintiffs,

v.

CITY OF WILMINGTON, DELAWARE,

Defendant.

C.A. No. 1:24-cv-01377-SRF

---

Claiborne S. Newlin, MARKOWITZ AND RICHMAN, Wilmington, DE; Mark Murphy and Lauren P. McDermott, MOONEY, GREEN, SAINDON, MURPHY AND WELCH, P.C., Washington, D.C.,
Attorney for Plaintiffs

Michael P. Stafford, YOUNG, CONAWAY, STARGATT AND TAYLOR LLP, Wilmington, DE,
Attorney for Defendant

---

**MEMORANDUM OPINION**

August 25, 2026
Wilmington, Delaware

**FALLON, U.S. MAGISTRATE JUDGE**

The Plaintiffs, current or former Wilmington Police Department Captains ("Captains") or ("Plaintiffs"), brought this action against their employer, the City of Wilmington (the "City") or ("Defendant"), alleging a violation under the Fair Labor Standards Act ("FLSA"). (D.I. 1) Pending before the court are the parties' cross motions for summary judgment. (D.I. 51,[1] D.I. 57)[2] On February 5, 2025, the parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (D.I. 8) The cross motions have been fully briefed, and the court heard oral argument on July 15, 2026. For the following reasons, Defendant's motion for summary judgment is GRANTED-IN-PART and DENIED-IN-PART, and Plaintiffs' motion for summary judgment is DENIED.

## I. JURISDICTION

Plaintiffs allege that they are entitled to overtime pay under the FLSA, 29 U.S.C § 207(a). The court has federal question jurisdiction over the FLSA claim under 28 U.S.C. § 1331.

## II. BACKGROUND

On December 16, 2024, this action was commenced by nine Plaintiffs who are current or former Wilmington Police Captains.[3] Plaintiffs include: Faheem Akil, Anthony Bowers, Tashawn Counts, Matthew Hall, Andrea Janvier, Randall Nowell, George Pigford, Matthew Rosaio and Malcolm Stoddard. (D.I. 1) The departments in which the Captains currently work or previously worked include the following: Human Resources (HRD), the Office of Professional Standards (OPS), Uniformed Services, the Criminal Investigations Division (CID),

---

[1] The briefing and filings associated with Defendant's motion for summary judgment are found at D.I. 52, D.I. 53, D.I. 54, D.I. 55, D.I. 56, D.I. 64, D.I. 65, D.I. 67.

[2] The briefing and filings associated with Plaintiffs' motion for summary judgment are found at D.I. 58, D.I. 59, D.I. 60, D.I. 61, D.I. 62, D.I. 63, D.I. 66, D.I. 70.

[3] Only the Defendant's exempt classification of the Captain's position under the FLSA is at issue. (D.I. 1)

Special Operations, and Drug, Organized Crime, and Vice (DOCV). (D.I. 59 at ¶ 7; D.I.61 at ¶ 7) Each subdivision is led by a Captain, and Uniformed Services consists of three geographic sectors, each with a Sector Captain.[4] (D.I. 55 at A755:5-A756:12)

All Captains participate in a rotating schedule as "Duty Captain" from Tuesday to Tuesday approximately once every seven weeks. (D.I. 52 at ¶ 10; D.I. 59 at ¶ 10-11) The Duty Captain has a scheduled shift at the station running from 4:00 p.m. to 12:00 a.m. Tuesday through Saturday, and "on-call" coverage for the remaining period of the duty week. (*Id.*) When on-site at a crime scene, the Duty Captain is the highest-ranking officer and is responsible for ensuring sufficient officers are on-site and that the scene is safe for the officers present. (D.I. 52 at ¶ 14; D.I. 59 at ¶40; D.I. 55 at A515:18-A516:17)

Sector Captains focus on a particular geographical area of the city and analyze crime trends within the sector. (D.I. 52 at ¶ 34; D.I. 59 at ¶ 8) The OPS Captain leads the Office of Professional Standards, assigns and supervises investigative sergeants, and oversees internal investigations and inspections. (D.I. 52 at ¶ 39; D.I. 54 at A281; D.I. 55 at A560:1-5, A560:17-A561:2, A580:17-21) The HRD Captain is in charge of the Wilmington Police Department Academy and supervises a lieutenant, sergeant, corporal, range officer, and an administrative assistant. (D.I 52 at ¶ 21-24; D.I. 55 at A494-A502) The Special Operations Captain oversees units including traffic, marine, K-9, school resource officers, community officers, and honor guard. (D.I. 52 at ¶ 48; D.I. 55 at A598) The CID Captain oversees and evaluates CID leadership as well as directs detectives in the division on how to proceed with particular cases. (D.I. 52 at ¶ 64; D.I. 55 at A666-684) The DOCV Captain leads investigations and tactical

[4] It is undisputed that the Special Operations Division no longer has a Captain assigned to it. However, the record is unclear as to when the Captain position was eliminated. (D.I. 52 at ¶ 5: D.I. 65 at 1)

operations focused on drug activity, organized crime, and vice; coordinates with federal partners; manages budgets and confidential funds; deploys specialized units; and presents operational updates. (D.I. 52 at ¶ 74; D.I. 55 at A202-A713) All Captains routinely monitor police radio traffic, remain prepared to respond to unfolding emergencies, and are required to respond to major incidents including shootings, homicides, barricaded subjects, and officer-involved incidents. (D.I. 59 at ¶ 26-27; D.I. 61 at ¶ 26-27)

At oral argument, Defendant submitted a chart identifying each Plaintiff's subdivision and the time period in which they served as Captain, as follows:

| | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|
| Akil | Sector 1 | Sector 1 | Sector 1 | Sector 1 | Sector 1 |
| Bowers | HRD | HRD | HRD/Major | Major | Major |
| Counts | Sector 2 | Sector 2 | Spec Ops/OPS | OPS | OPS |
| Hall | Spec. Ops | Spec. Ops | Spec. Ops/Major | Major | Major |
| Janvier | Lt. | Lt. | HRD | HRD | HRD/Major |
| Nowell | Lt. | Lt. | Sector 2/CID | CID | CID |
| Pigford | DOCV | DOCV | DOCV | DOCV | DOCV |
| Rosaio | Lt. | Lt. | Sector 3 | Sector 3 | Sector 3/HRD |
| Stoddard | CID | CID | Sector 2 | Sector 2 | Sector 2 |

Plaintiffs collectively estimate that they are entitled to at least 14,926 hours of unpaid overtime work performed between "June 17, 2021[,] and 2024." (D.I. 59 ¶ 78; D.I. 58, Ex 19 at ¶55)[5] Plaintiffs represent that they were required to perform work outside of their regularly scheduled shifts, and this calculation is "based upon a combination of individual recollections and notes, regularly scheduled recurring meetings, and available documentation such as the red number log (which shows shootings and homicides) and [O]utlook calendar invites." (D.I. 58, Ex

[5] Plaintiffs claim that since the instant action was commenced, Plaintiffs have continued to work in excess of forty hours per week. (D.I. 58 at 32; D.I. 58, Ex 19 at ¶72)

19 at ¶55) This amounts to an estimated $955,861.04 in damages for the pre-litigation period. (*Id.* at ¶69)[6] Defendant challenges the underlying basis and method of calculation of Plaintiffs' alleged unpaid overtime. (D.I. 61 at ¶ 78)

On April 17, 2026, Plaintiffs and Defendant filed cross-motions for summary judgment. (D.I. 51; D.I. 57) The motions have been fully briefed and are ripe for review. The court heard oral argument on July 16, 2026. A four-day jury trial is set to begin on October 5, 2026. (D.I. 15)

## III. LEGAL STANDARD

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are material, and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere

[6] To calculate their total damages of $955,861.04, Plaintiffs used an hourly rate of $64.04, which represents the average rate for a mid-level captain at the midpoint of the damages period (July 1, 2021, through June 30, 2022). (D.I. 58, Ex 19 at ¶ 66-70)

existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment:

> [A]re no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). "The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party." *United Ass'n of Journeymen & Apprentice Plumbers & Pipefitters v. Int'l Bhd. of Elec. Workers*, C.A. No. 12–1060–GMS–SRF, 2015 WL 1516948, at 2 (D. Del. Mar. 31, 2015), *aff'd*, 643 Fed. App'x 133 (3d Cir. 2016) (quoting *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990)).

## IV. DISCUSSION

Defendant moves for entry of summary judgment on the basis that Plaintiffs are exempt from receiving overtime pay because their primary duties consist of management of their respective subdivisions. In the event Defendant is found liable under the FLSA, Defendant also asks the

court to enter summary judgment in its favor because Plaintiffs have not met their burden of proof on damages and have not shown that Defendant's alleged FLSA violation was willful. (D.I. 53 at 1)

Plaintiffs ask this court to enter summary judgment on four issues: (1) that Defendant unlawfully misclassified Plaintiffs as exempt employees in violation of the FLSA; (2) Defendant failed to pay Plaintiffs required overtime compensation for hours worked in excess of forty per week; (3) that Defendant's violation of the FLSA's overtime requirement was willful; and (4) that they are presumptively entitled to liquidated damages equal to the amount of their unpaid overtime compensation. (D.I. 57; D.I. 58)

**A. The FLSA Overtime Requirement**

**i. Relevant Law**

Under the FLSA, employers are generally required to pay employees at least "one-half times the regular rate at which he is employed," if the employee works in excess of forty hours within a week. 29 U.S.C. § 207(a)(1). Certain employees are exempt from the overtime requirement of the FLSA if they are employed in a "bona fide executive, administrative, or professional capacity" role. 29 U.S.C. § 213(a). Congress, however, left the key terms of Section 213(a)(1) undefined in the FLSA and instead delegated authority to the Department of Labor to define them through regulations. Under the regulation setting forth the general rules applicable to executive employees, an "employee employed in a bona fide executive capacity" is an employee who is:

> (1) Compensated on a salary basis pursuant to § 541.600 at a rate of not less than $684 per week...;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

Under the foregoing executive exemption, an employee is not entitled to overtime compensation if paid on a salary basis at a rate exceeding $684 per week, and the employee satisfies the applicable executive duty requirements.[7] 29 U.S.C. § 213(a); 29 C.F.R. § 541.100. The executive exemption applies when an employee's primary duties include managing the enterprise, directing the work of other employees, and exercising authority over hiring, firing, or promotion decisions. 29 C.F.R. § 541.100. The administrative exemption applies when an employee performs non-manual work related to the employer's management or general business operations and exercises discretion and independent judgment on matters of significance. 29 C.F.R. § 541.200.

At the center of this case is the first responder regulation, 29 C.F.R. § 541.3(b)(1), which excludes certain classes of workers from the FLSA's exemptions, including:

> "[P]olice officers, detectives ... fire fighters ... rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims ... or other similar work." [29 C.F.R.] § 541.3(b)(1). Stated otherwise, if an employee falls into one of these enumerated classes, then the FLSA's executive exemption does not apply and that employee must be paid overtime in accordance with 29 U.S.C. § 207.

*Emmons v. City of Chesapeake*, 982 F.3d 245, 251 (4th Cir. 2020).

Thus, regardless of compensation or rank, the executive and administrative employee exemptions do not apply to "police officers, detectives, deputy sheriffs, state troopers," and other

---

[7] The parties do not dispute that the Captains' salaries ranged from $123,400.65-$166,689.93 during the relevant time period. (D.I. 52 at ¶ 7; D.I. 65 at 1)

first responders whose primary duties involve activities such as preventing or detecting crimes, conducting investigations, performing surveillance, apprehending suspects, interviewing witnesses, or preparing investigative reports. C.F.R. § 541.3(b)(1). The regulation explains that these employees remain non-exempt because their primary duty is law enforcement rather than management. *Id.* at § 541.3(b)(2). Thus, a police officer whose primary responsibility is investigating crimes does not become exempt simply because the officer directs the work of others while conducting an investigation. *Id.*

Whether Plaintiffs are exempt from the FLSA's overtime requirement hinges on the determination of their "primary duty". According to the regulations, an employee's primary duty is the "principal, main, major or most important duty that [he] performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). Section 541.700(a) provides four factors that the court must consider when assessing an employee's primary duty: "(1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work;[8] (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* As aptly stated by a sister court in the Third Circuit:

> [M]any employees perform a variety of duties, some of which would qualify as executive or administrative, some of which would not. The FLSA deals with this practical complexity by categorizing employees as exempt or non-exempt based on their "primary

[8] Section 541.700(b) provides, "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work." 29 C.F.R. § 541.700

> duty." 29 C.F.R. § 541.700(a). An employee's primary duty is the principal, main, major or most important duty that the employee performs. The test is qualitative, requiring consideration of not only the amount of time an employee spends performing a given duty but also the relative importance of that duty and the employee's relative freedom from direct supervision in performing that duty. The employer bears the burden of proving that an employee's primary duty renders the employee exempt from overtime.

*Mogel v. City of Reading*, Civ. No. 5:20-CV-04464-JMG, 2021 WL 4989842, at *3 (E.D. Pa. Oct. 27, 2021) (citing *Clews v. Cty. of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021)) (cleaned up).

In their respective briefing, each side advocates a different approach with respect to the interaction between the executive and administrative employee exemptions, and the first responder regulation. (D.I. 53; D.I. 58) Because their duties involve some measure of frontline law enforcement, Plaintiffs argue that application of the first responder regulation renders the executive and administrative exemptions inapplicable. (D.I. 58 at 15-18) On the other hand, Defendant argues that the court must first apply the executive, administrative, and highly compensated employee exemptions, thus, obviating the need to address the first responder regulation. (D.I. 53 at 20-21)

The Third Circuit Court of Appeals has yet to interpret the first responder regulation and its interrelationship with the aforementioned exemptions. Notably, courts in other circuits have been consistent in ruling that it does not displace the primary duty test. Other circuits have found that the court should determine whether the employee's primary duty involves the types of non-exempt activities enumerated in the first responder regulation, even if it contains elements of exempt management. *See Mullins v. City of New York*, 653 F.3d 104, 119 (2d Cir. 2011) (applying the primary-duty test in conjunction with the first-responder regulation); *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012) (holding that the first responder regulation does not alter the primary-duty test); *Morrison v. County of Fairfax*, 826 F.3d 758,

767 (4th Cir. 2016) (explaining that the first responder regulation clarifies, but does not displace, the primary-duty test); *Escribano v. Travis County*, 947 F.3d 265, 268 n.4 (5th Cir. 2020) (explaining that whether an employee's primary duty is management determines both the executive exemption and application of the first-responder regulation); *Emmons v. City of Chesapeake*, 982 F.3d 245, 251-253 (4th Cir. 2020) (emphasizing that whether emergency response duties are exempt turns on the employee's primary duty).

**ii. Wilmington Police Department Captains**

Although Plaintiffs commenced this action as a collective action, they ultimately chose not to certify a collective class. (D.I. 54 at A395) Notwithstanding the lack of a collective class, Plaintiffs argued at oral argument that the court need not analyze Plaintiffs' claims individually. Nonetheless, even when there are multiple plaintiffs with identical claims, when "it is not a collective action [] each of the plaintiffs must individually carry his/her burden of proof." *Rosano v. Twp. of Teaneck*, No. CV 09-6339 (KSH) (PS), 2012 WL 13050594. at *6 (D.N.J. Dec. 28, 2012), *aff'd*, 754 F.3d 177 (3d Cir. 2014).

In their respective briefs, each side has focused on the nature of the Captains' duties within the specific subdivisions of the Wilmington Police Department. But neither side substantively addresses the four-pronged primary duty analysis. Instead, the parties focus their respective arguments on whether or not the general nature of the Captains' duties are more likely exempt managerial duties or non-exempt frontline first responder duties.

**Human Resources Division Captain**

Defendant argues that the HRD Captain's "principal" exempt function is "overseeing recruitment, training, and personnel operations; supervising Academy, Range and Human Resources Staff, managing [the] promotion process, budgets, and personnel records; acting as [a] liaison with the city, state, and federal agencies; monitor[ing] light-duty staff and youth

programs; and provid[ing] employee counseling and support." (D.I. 53 at 20; D.I. 54 at A310-311; A265-A266) In opposition, Plaintiffs contend that within the Human Resources Division, the Captain's workday "is dictated by street activity and that he continuously monitors the radio so he can respond when necessary." (D.I. 64 at 17; Ex. 11, at 42:3-11; Ex. 10, at 24:22-25:8)

**Office of Professional Standards Captain**

Defendant argues that the OPS Captain is responsible for overseeing the entirety of officer misconduct allegations and is responsible for compliance with WPD procedures, rules, regulations, and policies. (D.I. 53 at 23; D.I. 54 at A105-A106; D.I. 55 at A571:6-A574:2, A574:19-A575:3) In addition, the OPS Captain is not required to respond to calls but instead may use discretion to determine where he is needed. (D.I. 55 at A557:9-A558:15, A559:13-22) Plaintiffs contend that the OPS Captain's primary role is, nevertheless, "first responder," and there is an ongoing requirement to respond to crime scenes. (D.I. 64 at 7-8; D.I. 55 at A538)

**Criminal Investigations Division Captain**

Defendant argues that the CID Captains perform supervisory and staffing duties which are exempt and managerial in nature and a Captain is only required to respond to incidents in "severe situations such as homicides, and does so significantly less frequently than front line police officers." (D.I. 53 at 24-25; D.I. 55 at A692:12-A693:3) But the record indicates that a CID Captain is "on scene [as] a first responder" when shootings, homicides, and "any major events" occur. (D.I. 64, Ex 27 at 38-45)

**Division of Organized Crime and Vice Captain**

Defendant argues that the DOCV Captain leads investigations and tactical operations. (D.I. 53 at 25-26) Although Captains respond to incidents while on the Duty Captain rotation, Defendant contends that they also perform meaningful duties that are distinct from first responder responsibilities, such as "ensur[ing] the division's operations are properly staffed,

conduct[ing] performance evaluations, and ensur[ing] that investigations are executed efficiently at all times." (D.I. 53 at 25-26; D.I. 54 at A340; D.I. 55 at A713:25-A715:18) In opposition, Plaintiffs argue that the DOCV Captain's day differs based on street activity. (D.I. 64, Ex 30 at 17-18) A general day can include assisting officers with surveillance of "hot spot area[s]" of violence in order to "intervene in any crime that's happening there." (*Id.*)

**Special Operations Captain**

Defendant argues that the Special Operations Captain oversees specialized units, manages the operations budget, and "partner[s] with other state and federal agencies in connection with large-scale events occurring within the jurisdiction[.]" (D.I. 53 at 27; D.I. 54 at A295; D.I. 55 at A600:12-A601:4) However, Plaintiffs argue that the Sector Captain actively patrols assigned areas, participates in and executes plans regarding public safety. (D.I. 64, Ex. 28 at 29-31)

**Sector Captain**

Defendant argues that the Sector Captains are responsible for "all…aspects of that geographical area with regards to policing." (D.I. 53 at 28; D.I. 55 at A728:6-19) According to Defendant, the Sector Captain oversees all activity occurring within their assigned sector, directs officers to a particular location within their sector, and has "discretion to determine whether a community complaint has merit and should be pursued." (D.I. 53 at 28; D.I. 55 at A739:20-A740:15; D.I. 54 at A465:5-20) Plaintiffs argue that the role of sector captain is focused on "managing public safety through patrol and on-scene response, not personnel administration." (D.I. 64 at 9; Ex. 27, at 42:16–43:13)

Plaintiffs rely upon *Mullins*, 653 F.3d 104, in support of their position that they are nonexempt first responders entitled to overtime compensation. (D.I. 58 at 15-17, 24-25, 28-29) In *Mullins*, the Second Circuit Court of Appeals found that where it was undisputed that the

police sergeants spent most of their time performing field law-enforcement duties and performed few managerial tasks outside that context, they qualified as non-exempt first responders under 29 C.F.R. § 541.3(b)(1). *Mullins*, 653 F.3d at 115-118.

Defendant relies upon *Emmons*, 982 F.3d 245, in support of its position that Plaintiffs are exempt employees because of their managerial duties, and, therefore, are not entitled to collect overtime wages. (D.I. 53 at 19, 23, 24-25, 34, 44-45, 48) In *Emmons*, the Fourth Circuit Court of Appeals affirmed the trial court's entry of summary judgment in favor of the employer, finding that Plaintiffs' fire department Battalion Chiefs ("BCs") were exempt from overtime under the FLSA. *Emmons*, 982 F.3d at 258. The court first determined that the primary duty of the BCs was to establish a command structure and strategically direct firefighting efforts from their command vehicles. *Id.* at 255. Because the BCs' primary duty was not frontline firefighting, the first responder regulation did not "preemptively exclude" the BC position from the executive exemption. *Id.* at 256. The court then applied the exemption to the undisputed facts of the case and found the BCs fell within its scope. *Id.* at 256-257.

However, the court in *Mogel* addressed a similar FLSA claim in which the plaintiff began his career as a "line firefighter" and ended his career as a "First Deputy Fire Chief." *Mogel,* 2021 WL 4989842, at *1. The plaintiff in *Mogel*, as "First Deputy Fire Chief," "supervis[ed] his platoon, prepar[ed] administrative reports, and maintain[ed] equipment and discipline, but also respond[ed] to fires and emergencies." *Id.* The court found that both parties submitted evidence that could persuade a jury to resolve the exemption issue in their favor, therefore, neither was entitled to entry of summary judgment. *Id** at 4.

Defendant moves for entry of judgment that Plaintiffs are exempt executive or administrative employees and has produced evidence that could reasonably support such a finding. (D.I. 51; D.I. 53) Plaintiffs oppose Defendant's motion. Plaintiffs move for an entry of

judgment that they are non-exempt first responders and have produced evidence that could reasonably support such a finding. (D.I. 57; D.I. 58) Therefore, a genuine dispute of fact exists concerning whether Plaintiffs' "main, major, or most important duty" is management or frontline law enforcement. 29 C.F.R. § 541.700(a). The factual dispute precludes the entry of summary judgment for either side, and the exemption issue under the FLSA is left for the jury to determine at trial.

**iii. Damages**[9]

Defendant asks the court to enter summary judgment in its favor on the basis that Plaintiffs have not met their burden of proof with respect to the calculation of the overtime wages they are claiming as damages. (D.I. 53 at 45) An employee bears the initial burden of proving that they performed uncompensated work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1986). Normally a plaintiff would request the records from their employer and meet their burden, but in a case where an employer has not maintained such records, "[t]he burden of any consequent imprecision [in an employee's calculation of damages] must be borne by th[e] employer, and the employee will only be required to 'submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.' Once this inference is created, the burden shifts to the employer to rebut that inference." *Rosano v. Township of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2014) (citing *Mt. Clemens,* 328 U.S. at 686–88).

---

[9] "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(d)

Defendant admits that it employs an "honors system" with respect to whether employees worked eight hours or more (in a day). (D.I. 58 at Ex 1, 54-55) Moreover, the hours of the Captains "[were not] tracked, unless people tracked it themselves." (D.I. 58 at Ex 1, 54-55)

The cases cited by Defendant in support of its argument are distinguishable from the facts of this case. Defendant relies upon *Montano v. Allen Harim Foods*, LLC, 2017 WL 3328360, at *11-13 (D. Del. Aug. 4, 2017), *report and recommendation adopted sub nom. Montano v. Allen Harim Foods*, LCC, 2017 WL 4162177 (D. Del. Sept. 20, 2017) (denying the employer's motion for summary judgment on the employee's claim for unpaid overtime work, where the parties disputed the accuracy of existing payroll records and whether the employee's "credible testimony approximating the number of hours worked without pay" was "sufficient evidence to show the amount and extent of the unpaid overtime work at issue as a matter of just and reasonable inference[,]") and *DiSantis v. Morgan Props. Payroll Servs., Inc.*, 2010 WL 3606267, at *13-14 (E.D. Pa. Sept. 16, 2010) (granting the employers' motion for summary judgment where the employee disputed the accuracy of existing time-keeping records but only provided speculative testimony that she "often worked more than 40 hours in a week of her employment[.]") (D.I. 53 at 45-46) Unlike the Defendant, the employers in the *Montano* and *DiSantis* cases maintained employee time and payroll records.

Where, as here, the Defendant did not keep any payroll records, the plaintiff is required only to "submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred[.]" *Rosano v. Township of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2014). In *Rosano*, the court found that where the employer maintained adequate employment records, the officers failed to submit sufficient evidence from which their damages could be reasonably inferred. *Id.* at 189-190. The only evidence submitted by the officers of their alleged overtime damages was a spreadsheet prepared by one of their spouses. *Id.* at 188-189. The court

found the calculations speculative and insufficient to shift the burden to the employer to rebut the inference. *Id.*

In the instant case, Plaintiff Malcolm Stoddard submitted a declaration regarding the hours that Captains were required to spend at after-hours meetings, the average amount of time spent responding to after-hours shootings and homicide incidents, preparation for and attendance at multiple recurring meetings outside of scheduled hours, and performance of numerous other required after-hours duties involving service to the community. (D.I. 58 at Ex. 19, ¶¶ 53-74) Plaintiffs calculate that they have collectively worked at least 14,926 hours of uncompensated overtime during the three year period preceding the filing of the instant case. (D.I. 58 at Ex. 19, ¶¶ 66-69) "This amounts to an estimated $955,861.04 in damages for the pre-litigation period." (Ex 19 at ¶¶ 69-70)

Accordingly, the court finds that Plaintiffs have met their burden to submit sufficient evidence from which the amount of unpaid overtime may be reasonably inferred. Unlike the outcome in *Rosano*, 754 F.3d 177, the burden now shifts to the Defendant to rebut the inference at trial, and it would be inappropriate for the court to enter summary judgment for Defendant on damages.

**iv. Statute of Limitations**

"The FLSA has a two-year statute of limitations. 29 U.S.C. § 255(a). This means an employee can recover the difference between what he was paid and what he was owed under the FLSA on every paycheck he received in the two years before he filed his complaint. When an employee can show that his employer "willful[ly]" violated the FLSA, however, this statute of limitations extends to three years. 29 U.S.C. § 255(a)." *Mogel v. City of Reading*, WL 4989842, at *4. Plaintiffs bear the burden of establishing a willful violation of the FLSA. *Sec'y United States Dep't of Lab. v. Nursing Home Care Mgmt. Inc.*, 128 F.4th 146, 158 (3d Cir.), *cert. denied*

*sub nom. Nursing Home Care Mgmt., Inc. v. Chavez-DeRemer,* 146 S. Ct. 99 (2025) (citing *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 135 (1988)). The Supreme Court made clear that an "employee need not additionally demonstrate that the employer's conduct was outrageous," to demonstrate willfulness. *Stone v. Troy Constr., LLC*, 935 F.3d 141, 148 (3d Cir. 2019). "In sum, willfulness under the FLSA is established where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]" *Id.*

Plaintiffs rely upon evidence that the HR Director for the City had no personal knowledge of any FLSA analysis or review with regard to WPD Captains. (D.I. 58 at Ex. 17, 24:7-26:20) Furthermore, the deposition testimony from Wilmington's Director of HR and the Director of Classification and Compensation shows that, "Wilmington never conducted an FLSA compliance review or exemption analysis for the WPD Captain position – either before or after the City became aware of this lawsuit." (D.I. 58 at Ex 16, 14-37)

"[I]n *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135, 108 S.Ct. 1677, 1682, 100 L.Ed.2d 115, 124 (1988), the Court rejected such a claim, holding that 'a standard [of willfulness] that merely requires that an employer knew that the FLSA "was in the picture…" virtually obliterates any distinction between willful and non-willful violations.' The Court found that in common usage the word 'willful' is considered synonymous with such words as 'voluntary', 'deliberate', and 'intentional.'" *Oakes v. Com. of Pa*., 871 F. Supp. 797, 801 (M.D. Pa. 1995) (cleaned up). Plaintiffs have not shown that Defendant's inaction amounts to "voluntary," "deliberate," or "intentional" violations of the FLSA.[10]

---

[10] The determination of whether a FLSA violation was willful is a question of law on which the plaintiff bears the burden of proof. *Adams v. United States,* 350 F.3d 1216, 1229 (Fed.Cir.2003) (holding that plaintiff bears burden); *Martin v. Selker Bros. Inc.*, 949 F.2d 1286, 1292 (3d Cir.1991) (holding that willfulness is question of law).

Because Plaintiffs bear the burden of proof on the issue of willfulness, the absence of such evidence precludes summary judgment in their favor. Accordingly, summary judgment shall be entered in favor of Defendant, limiting the relevant damages period under the FLSA to the two year period before the complaint was filed. 29 U.S.C. § 255(a).

**v. Liquidated Damages**

"Employees who can show they have been deprived of overtime under the FLSA are usually also entitled to liquidated damages equal to their unpaid overtime compensation. 29 U.S.C. § 216(b). But if an employer "shows to the satisfaction of the court" that it acted in "good faith" and had a "reasonable basis" for maintaining a compensation scheme that violated the FLSA, then the court can deny or reduce liquidated damages. 29 U.S.C. § 260." *Mogel v. City of Reading*, 2021 WL 4989842, at *5.

"Whether an employer's conduct under the FLSA was in good faith and reasonable is a mixed question of law and fact. *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 35 (1st Cir.2007) (citation omitted). The district court in its discretion may disallow liquidated damages if the employer meets its "'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'" *Marshall,* 668 F.2d at 753 (quoting *Rothman v. Publicker Indus.*, 201 F.2d 618, 620 (3d Cir.1953)). An employer who cannot meet this burden is subject to mandatory liquidated damages. *Id.*" *Lugo v. Farmer's Pride Inc.*, 802 F. Supp. 2d 598, 616 (E.D. Pa. 2011).

It would be premature for the court to grant summary judgment on the Plaintiffs' claim for liquidated damages. The court cannot determine at this stage whether Defendant's compensation scheme violated the FLSA, but if a jury finds that it did, then Plaintiffs may be entitled to liquidated damages, and the court shall address it at the appropriate time. *See Sec'y, United States*

*Dep't of Labor v. E. Penn Mfg. Co., Inc.*, 123 F.4th 643, 651 (3d Cir. 2024), *cert. denied sub nom. E. Penn Mfg. Co., Inc. v. Chavez-DeRemer*, 146 S. Ct. 355, 223 L. Ed. 2d 191 (2025) (affirming the trial court's decision to conduct a post-trial evidentiary hearing and consider documentary evidence concerning liquidated damages.)

## V. CONCLUSION

For the reasons explained above, the court finds that:

1. There is a genuine dispute of material fact as to whether Plaintiffs are exempt from the FLSA's overtime requirements. Accordingly, both parties' motions for summary judgment are **DENIED**.
2. There is a genuine dispute of material fact as to the Plaintiffs' alleged damages for uncompensated overtime. Accordingly, both parties' motions for summary judgment are **DENIED**.
3. Defendant's motion for summary judgment on the issue of willfulness under the FLSA is **GRANTED**.
4. Summary Judgment on the issue of liquidated damages under the FLSA is **DENIED**.

An Order accompanying this Opinion shall issue.